IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Anthony Martin DeSoto,<br><br>　　　Plaintiff,<br><br>vs.<br><br>Carolyn W. Colvin, Acting Commissioner of Social Security Administration,<br><br>　　　Defendant. | No. CV-12-321-TUC-CKJ-DTF<br><br>**REPORT AND RECOMMENDATION** |

Plaintiff Anthony DeSoto brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision by the Commissioner of Social Security (Commissioner). Before the Court are DeSoto's Opening Brief, Respondent's Response and a Reply. (Docs. 21, 29, 35.) Based on the pleadings and the administrative record submitted to the Court, the Magistrate Judge recommends the District Court, after its independent review, remand this case for further proceedings.

**PROCEDURAL HISTORY**

DeSoto filed an application for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) on June 27, 2008. (Administrative Record (AR) 198, 201.) DeSoto alleged disability from May 2, 2008. (AR 198, 201.) DeSoto's application was denied upon initial review (AR 127-34) and on reconsideration (AR 136-41). A hearing was held on June 14, 2010 (AR 46-122), after which Administrative Law Judge (ALJ) Lauren R. Mathon found, at Step Four, that DeSoto was not disabled (AR 13-25). The Appeals Council denied DeSoto's request to review the ALJ's decision. (AR 1.)

## FACTUAL HISTORY

DeSoto was born on October 15, 1961, making him 47 at the alleged onset date of his disability. (AR 198.) He worked as a hair stylist from at least 1993 until he stopped working on May 2, 2008. (AR 59, 224.) On that day he was hospitalized after acting out at work and was first diagnosed as bipolar. He was hospitalized two additional times in June 2008, due to mental health issues. DeSoto asserts that he cannot work because of a birth defect affecting his hands and feet that cause aching, some of his fingers and toes are not full length and he is missing some fingers on his right hand. (AR 216, 266, 267.) Further, he is bipolar and suffers from depression. He also cites sleep apnea, pancreatitis and back pain.

The ALJ found that DeSoto had several severe impairments, pancreatitis, sleep apnea, congenital deformities of the bilateral hands and toes, bipolar disorder and depression. The ALJ concluded DeSoto had the residual functional capacity (RFC) to perform the full range of light work, and that he: could sit, stand and walk each for 6 hours of a work day; could occasionally balance and crawl; could not climb ladder/rope/scaffolds or be exposed to heights and hazardous machinery; had limited ability to handle and finger; and had the mental ability to remember and carry out simple and detailed instructions, relate and interact with others, maintain concentration and attention for simple and complex work, and tolerate moderate stress. (AR 20.) Based on this RFC, the ALJ found Plaintiff not disabled because he could perform his past relevant work as a hairdresser and other work available in the national economy.

## STANDARD OF REVIEW

The Commissioner employs a five-step sequential process to evaluate SSI and DIB claims. 20 C.F.R. §§ 404.920, 416.1520; *see also Heckler v. Campbell,* 461 U.S. 458, 460-462 (1983). To establish disability the claimant bears the burden of showing he (1) is not working; (2) has a severe physical or mental impairment; (3) the impairment meets or equals the requirements of a listed impairment; and (4) claimant's residual functional capacity (RFC) precludes him from performing his past work. 20 C.F.R. §§ 404.920(a)(4),

1 416.1520(a)(4). At Step Five, the burden shifts to the Commissioner to show that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. 20 C.F.R. §§ 404.920(a)(4), 416.1520(a)(4).

In this case, DeSoto was denied at Step Four and Step Five of the evaluation process. The Step Five determination is made on the basis of four factors: the claimant's RFC, age, education and work experience. *Hoopai*, 499 F.3d at 1074. "The Commissioner can meet this burden through the testimony of a vocational expert or by reference to the Medical Vocational Guidelines." *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)). The findings of the Commissioner are meant to be conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla but less than a preponderance." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)). The court may overturn the decision to deny benefits only "when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). This is so because the ALJ "and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney,* 981 F.2d at 1019 (quoting *Richardson v. Perales*, 402 U.S. 389, 400 (1971)); *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1198 (9th Cir. 2004).

## **DISCUSSION**

This case presents three issues on appeal: whether the ALJ failed to give sufficient weight to treating physicians' opinions; whether the ALJ erred in evaluating Plaintiff's credibility; and whether the ALJ properly considered lay witness testimony. Plaintiff also

argues the ALJ erred in evaluating Plaintiff's ability to work at Step Four and Five, but the alleged errors are actually premised on the validity of the RFC and are encompassed within claims one through three.

**Treating Physicians**

Plaintiff argues that the ALJ failed to give proper weight to his treating physicians and records, including his mental health providers, treatment for his degenerative back condition, Dr. Shapiro regarding Plaintiff's foot impairments, Dr. Ruboyianes regarding sleep apnea, and treatment for pancreatitis.

Plaintiff does not point to any medical opinions by a treating physician for his mental health diagnosis. The possible exception is a one-page document determining that DeSoto qualifies as seriously mentally ill for purposes of Arizona's Department of Health Services. (AR 647.) However, it is not clear that the signer of the document, Dr. Richard V. Barnes, provided or oversaw Plaintiff's treatment at any time. It states that Plaintiff performs significantly below expectation for cognitive/developmental level, but there is no opinion on his ability to function in a workplace. (*Id.*) The other record upon which Plaintiff relies is a statement from Robert D. Claassen, MC LPC. (AR 744.) Although this is relevant evident, Claassen does not qualify as an acceptable medical source or a treating physician; this letter is discussed below as lay witness testimony.

Plaintiff disputes the ALJ's treatment of his physical impairments, in particular his back and feet. The only record he references regarding his back degeneration is one report from a September 2008 X-ray, revealing L3-L4 degenerative disc disease and minimal mid-lumber levoscoliosis. (AR 594.) Examining physician Dr. Susan Courtney determined the only relevant finding from that testing to be minimal scoliosis and she did not limit his functionality in any way due to these findings. (AR 585.) There are no records of treatment for any back impairments. DeSoto has not pointed to any opinion evidence that he is limited in his ability to perform work due to a back impairment.

With respect to his feet, there is one record of DeSoto seeing Dr. Elaine Shapiro, a podiatrist, on November 19, 2010. Dr. Shapiro is an acceptable medical source with respect

1  to impairments of the foot and ankle. 20 C.F.R. §§ 404.1513(a)(4), 416.913(a)(4). She
2  diagnosed him with excessive pronation bilaterally, plantar fascitis and heel spur syndrome
3  bilaterally and a possible soft tissue injury causing swelling. (AR 797.) She concluded he
4  could not perform a standing job due to pedal pain. (*Id.*) Based solely on his reporting, she
5  also concluded he could not perform seated work due to medication impairment of his
6  cognition. (AR 796.) She prescribed treatment but noted that he did not have the financial
7  ability to pay for it. (AR 797.) This treatment note was not in the record before the ALJ but
8  was considered by the Appeals Council in denying review. (AR 1-2.) Because Dr. Shapiro
9  restricted DeSoto from performing standing work due to a foot and ankle impairment, the
10 Court finds the Commissioner erred in rejecting this opinion without providing specific,
11 legitimate reasons.[1] *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995) (requiring
12 "specific and legitimate reasons," supported by substantial evidence to reject the opinion of
13 an examining physician).

14 Plaintiff was seen by Dr. John Ruboyianes for a sleep study in August 2009. (AR
15 695.) At that time, Dr. Ruboyianes noted that DeSoto had low sleep efficiency of 53% with
16 sleep fragmentation and noted oxygen desaturations. (AR 695-96.) The doctor prescribed a
17 Servo unit with specific levels that he felt might resolve the mild hypoxemia. (AR 696.)
18 Plaintiff cites no other records from this physician. On June 11, 2010, Dr. Ruboyianes
19 provided an opinion that DeSoto had significant disability, extreme fatigue, loss of
20 concentration, and difficulty in comprehension related to his sleep apnea. (AR 729.) He said
21 it would take time to see if the prescribed machine could alleviate the symptoms. (*Id.*) The
22 ALJ gave no controlling weight to his opinion finding it general and conclusory. (AR 18.)
23 The Court finds no error by the ALJ with respect to Dr. Ruboyianes's opinion. To the extent
24 the doctor found DeSoto had a significant disability that is an ultimate conclusion reserved

---

[1] The Court notes the ALJ stated he gave great weight to the opinion of Dr. Courtney. However, the ALJ found DeSoto could stand and walk for 6 hours each in a workday (AR 20), while Dr. Courtney concluded DeSoto could spend only 2 to 6 hours standing and walking combined (AR 587).

- 5 -

to the Commissioner. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1). Further, in the one treatment record there is no discussion of DeSoto's level of concentration or comprehension and how the sleep apnea impacts his ability to work. *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (finding ALJ not required to accept doctor's opinion that is conclusory, brief and not sufficiently supported by clinical findings). Also, as noted by the ALJ, there are no records of ongoing treatment and Plaintiff indicated he does not always use his CPAP machine. (AR 21-22, 23.)

Finally, DeSoto disputes the ALJ's treatment of his pancreatitis. Plaintiff argues he had not one but two episodes of pancreatitis, one in August and one in December 2009. The records cited by DeSoto are all related to a December 2009 emergency room visit, although there is reference to a prior pancreatitis issue in 2004. (AR 705, 709, 711.) There are no records indicating a recurring problem that would significantly effect DeSoto's ability to work.

In sum, the Court finds the ALJ erred in his evaluation of Dr. Shapiro's opinion but not with respect to any other treating physicians' opinions.

**Credibility**

The ALJ found Plaintiff's statements concerning the severity of his symptoms not credible to the extent inconsistent with the ALJ's RFC finding. (AR 21.)

In general, "questions of credibility and resolution of conflicts in the testimony are functions solely" for the ALJ. *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)). However, "[w]hile an ALJ may certainly find testimony not credible and disregard it . . . [the court] cannot affirm such a determination unless it is supported by specific findings and reasoning." *Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 884-85 (9th Cir. 2006); *Bunnell v. Sullivan*, 947 F.2d 341, 345-346 (9th Cir. 1995) (requiring specificity to ensure a reviewing court the ALJ did not arbitrarily reject a claimant's subjective testimony); SSR 96-7p. "To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue,* 504 F.3d 1028, 1035-36 (9th Cir. 2007).

"First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell,* 947 F.2d at 344). The ALJ found DeSoto had satisfied part one of the test by proving impairments that could produce the symptoms alleged. (AR 21.) Second, if "there is no affirmative evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Tommasetti v. Astrue,* 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281, 1283-84 (9th Cir. 1996)). The ALJ did not find, and the record does not reveal, any evidence of malingering; therefore, to support his discounting of DeSoto's credibility regarding the severity of his symptoms, the ALJ had to provide clear and convincing, specific reasons.[2] *See Vasquez v. Astrue*, 572 F.3d 586, 592 (9th Cir. 2008) (quoting *Lingenfelter*, 504 F.3d at 1036).

The ALJ discounted Plaintiff's credibility regarding the severity of his symptoms arising from his deformed hands and feet, pancreatitis, sleep apnea, and bipolar disorder for several reasons. With respect to his hands and feet, the ALJ found there was no evidence of treatment for these conditions and Plaintiff had a substantial work history despite these deformities. Contrary to the ALJ's finding, Plaintiff did see a podiatrist due to his alleged foot pain and swelling. (AR 796-97.) Dr. Shapiro diagnosed a possible soft tissue injury as well as plantar fascitis and heel spur syndrome bilaterally. (AR 797.) She recommended treatment but noted that DeSoto was unable to afford what she prescribed. (*Id.*) She also opined that he could not perform a standing job due to his foot impairments. (*Id.*) Further, DeSoto testified that his primary care physician was prescribing medication to address the

---

[2] The Commissioner used a lower standard in her brief, requiring only that the ALJ provide specific reasons supported by record evidence. (Doc. 29 at 19-20.) In support of this argument, Defendant relies upon the en banc decision in *Bunnell v. Sullivan*, which did not apply a clear and convincing standard. Subsequent to the 1991 decision in *Bunnell*, panels of the Ninth Circuit Court of Appeals have expanded upon, not overturned, that decision in applying a clear and convincing standard when there is no evidence of malingering. This Court follows those recent decisions as cited above.

- 7 -

1  swelling and investigating his thyroid as a source of the problem (AR 65-66); he also
2  discusses this treatment in his therapy records (909-10.) Records from his primary care
3  physician for this treatment are not in the administrative record.

4        The record confirms Plaintiff did, in fact, receive treatment for his foot impairment,
5  although additional records could be obtained regarding this impairment. Additionally, an
6  ALJ may not draw inferences based on a failure to seek treatment without inquiring for an
7  explanation by the claimant or considering other record evidence that may explain the lack
8  of care. SSR 96-7p. There is no evidence in the record, including the hearing transcript
9  indicating the ALJ sought an explanation for lack of treatment. Further, the podiatrist
10 included a statement that DeSoto could not afford the suggested treatment. Based on the
11 above, the ALJ's credibility finding with respect to DeSoto's foot deformity is not based on
12 clear and convincing evidence.

13       With respect to pancreatitis, the ALJ stated that DeSoto had only one episode since
14 his alleged disability onset date and one follow-up visit that revealed it was resolving. (AR
15 21.) This finding is supported by the record and provides clear and convincing evidence to
16 support the ALJ's conclusion that pancreatitis did not significantly restrict DeSoto's ability
17 to engage in substantial gainful activity. (*Id.*)

18       With respect to sleep apnea, the ALJ found no evidence of ongoing treatment and
19 noted that Plaintiff "merely testified that he has had difficulty adjusting to the CPAP since
20 2009, and does not always use it." (AR 22.) Plaintiff also testified that he is consistently
21 fatigued due to poor sleep, and medication, and falls asleep during the day. (AR 67, 69.) His
22 mother corroborated that he will fall asleep while watching television or talking to her. (AR
23 95.) Further, the ALJ failed to inquire why DeSoto had not sought further treatment. *See* SSR
24 96-7p. The ALJ failed to provide clear and convincing reasons to discount DeSoto's
25 allegation of fatigue.

26       With respect to bipolar disorder, the ALJ found it was medically controlled and should
27 continue to be with proper adherence to medication. (AR 22.) He also made a finding that
28 the medical evidence indicated treatment for DeSoto's symptoms had been successful in

- 8 -

controlling them, that he has responded well to treatment for his bipolar disorder, he is not restricted in his ability to think, understand and communicate, he can act in his own interest, and no substantive evidence revealed new or more severe symptoms. (AR 22.) In support of these findings, the ALJ noted that DeSoto's Global Assessment of Functioning (GAF) was consistently 65 to 69 from September 2008 to February 2010.[3] (*Id.*) The ALJ stated that the medical record indicates the claimant has significantly improved since his breakdown in June 2008. Based on the record review, as detailed in the paragraph below, these findings are a clear and convincing, specific reason to find DeSoto less than credible.

The records predominantly reflect improvement from mid-2008 and mild ongoing symptoms. By November 2008, DeSoto was given a GAF of 65, which moved up to a 69 from November 2009 through the remainder of the records in January 2012. (AR 608, 644, 724, 726-28, 740, 743, 806, 807, 810, 815, 816, 819.) Through mid-2010, DeSoto generally reported that his moods were stable and well-managed with medication, with some days of depression. (AR 605, 608, 643, 644, 651, 722, 723, 724, 726, 730, 732, 743, 806.) In August and September 2009, he had increased symptoms of depression and anxiety, but acknowledged a lack of full compliance with medication. (AR 643, 644.) In the latter part of 2010, DeSoto had some increase in mild to moderate depression symptoms that the doctor thought might be connected to a thyroid issue. (AR 807, 809, 810, 859, 869, 872.) By 2011, DeSoto was seeking independent housing, his mood was generally stable with some days better than others, he periodically reported medication lethargy but declined a medication change, and overall he improved during the year. (AR 815-17, 819, 878, 884, 893, 897, 900, 903, 919, 935.)

---

[3] The GAF is a 100-point scale that measures a person's overall level of psychological, social and occupational functioning on a hypothetical continuum. *See* American Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* ("*DSM IV*"), at 32, 34 (4th ed. 2000). Lower numbers indicate more severe symptoms. A rating of 61 to 70 indicates some mild symptoms OR "some difficulty in social, occupational, or school functioning . . . but generally functioning pretty well, has some meaningful interpersonal relationships." *Id.* at 34.

The ALJ also discounted Plaintiff's credibility because he found that Plaintiff's activities of daily living were not as limited as would be expected based on Plaintiff's reported symptoms. In particular, although Plaintiff testified that he did no chores or cooking and relied upon his mother, in prior written statements he acknowledged bathing and grooming, cooking, driving, reading, cleaning, shopping and going to the park. (AR 22.) Further, the ALJ noted there was no explanation as to why DeSoto could not perform any of these activities. (*Id.*)

In an undated report,[4] DeSoto stated that he would clean to help his mom, read, go to the movies, prepare frozen dinners but not cook, drive, go to church, walk a mile. (AR 239-45.) He stated he was no longer able to shop or do yard work and that he slept a lot. (AR 240, 243.) DeSoto responded that he did not do house and yard work because he parents did it. (AR 242.) In a March 2009 questionnaire, DeSoto reported that he did not walk because his feet hurt, he would grocery shop with his mother once a month, cleaned only his bedroom and had difficulty doing housework. (AR 269-70.) He further stated that he would not drive far from home and he required naps during the day. (AR 270.) At the June 2010 hearing, DeSoto testified that he would fall asleep during the day. (AR 69.) He stated that his mother did the grocery shopping, cleaning and laundry because he was too tired and did not have the patience, but he would take a bath or shower. (AR 70-71, 73, 85.) He reported that during the day he would sleep and watch television, sit outside, and three times a week he walked a half mile around the nearby park. (AR 71, 82-84.) He no longer went to church or grocery shopping because the crowds caused him anxiety, and he did not have the patience to read. (AR 75-76.)

Contrary to the finding of the ALJ – that there was no explanation for DeSoto's inability to conduct any activities of daily living – he stated that he did not do as many activities outside the home due to crowd anxiety and that he was too tired and lacked the

---

[4] Both documents regarding Plaintiff's functional abilities are extremely difficult to read as the reproduction quality is poor. (AR 239-46, 269-70.)

- 10 -

1 patience for household chores. With respect to anxiety, the ALJ sufficiently addressed
2 DeSoto's credibility as to his mental health symptoms. However, the ALJ's discounting of
3 DeSoto's credibility with respect to fatigue, based on his activities of daily living, was not
4 a clear and convincing specific reason.

To the extent identified above, the Court finds the ALJ's credibility finding was not based on specific, clear and convincing reasons. In particular, the ALJ did not provide sufficient reasons for discounting DeSoto's assertions of limitations arising from his foot impairment and his fatigue symptoms (whether caused by sleep apnea, depression or medication).

**Lay Testimony**

Plaintiff argues the ALJ improperly rejected the testimony of Plaintiff's mother, Alice DeSoto, and his counselor, Robert Claassen. ALJs must consider lay witness testimony and rejection of lay testimony requires reasons specific to each witness. *Stout v. Comm'r, Social Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006).

In August 2008, Alice DeSoto completed a function report in which she stated that Plaintiff would watch television and movies, visit friends, go to church, and sometimes stay at a friend's house. (AR 231, 235.) She indicated he would sometimes prepare simple meals and do his laundry, but she did most of his cooking and had to assist him with laundry. (AR 233.) In February 2009, she completed a second similar report.[5] (AR 255-63.) At the hearing, she testified that Plaintiff did very little but watch television, that she cleaned the house, cooked, did the laundry and the grocery shopping. (AR 87-89.) She reported that he gets upset periodically and she can't tell him to do anything but the medication has helped calm him down. (AR 90-91.) She also noted that his feet and legs would swell and he would elevate them, and that he would fall asleep watching television during the day. (AR 91, 95.)

The ALJ's consideration of evidence from Alice DeSoto is reflected in his summary

---

[5] This document is unreadable in many sections due to the poor quality of the reproduction.

- 11 -

1  of her written and oral testimony, noting that it corroborated Plaintiff's statements. He did
2  not, however, specifically address a reason to reject her testimony. This was error. *See*
3  *Molina v. Astrue*, 674 F.3d1104, 1115 (9th Cir. 2012). Defendant contends the error is
4  harmless because the same reasons the ALJ articulated for discounting DeSoto's testimony
5  apply to his mother's similar testimony. The Court may find an error harmless if it is
6  "inconsequential to the ultimate nondisability determination." *Id.* (quoting *Carmickle v.*
7  *Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008). Because the Court found the
8  ALJ's reasoning lacking in part as to DeSoto's credibility, that reasoning cannot fully sustain
9  a rejection of his mother's testimony. On remand, the ALJ should consider Alice DeSoto's
10 testimony and, to the extent he rejects it, provide specific reasons for doing so.

11 The letter from Claassen was not before the ALJ but, because it was considered by the
12 Appeals Council (AR 2), it is properly raised before this Court as an alleged error by the
13 Commissioner. However, because this case is subject to remand on other grounds and the
14 ALJ has not had an opportunity to consider Claassen's letter, the Court does not reach the
15 issue and directs the ALJ to consider it on remand.

## **REMEDY**

17 The Court has discretion to remand for further development of the record or for an
18 award of benefits. 42 U.S.C. § 405(g); *see Harman v. Apfel*, 211 F.3d 1172, 1173-74 (9th
19 Cir. 2000). Remand for further development is necessary in this case because after the ALJ
20 reconsiders the evidence from Dr. Shapiro and Plaintiff's credibility, with respect to the
21 impairment of his feet and his fatigue, he must reconsider DeSoto's RFC and the analysis at
22 Steps Four and Five, including gathering additional vocational expert testimony if warranted.

## **RECOMMENDATION**

24 For the foregoing reasons, the Magistrate Judge recommends the District Court, after
25 its independent review, enter an order remanding the case to the ALJ for further
26 consideration.

27 Pursuant to Federal Rule of Civil Procedure 72(b)(2), any party may serve and file
28 written objections within fourteen days of being served with a copy of the Report and

1 Recommendation. A party may respond to the other party's objections within fourteen days.
2 No reply brief shall be filed on objections unless leave is granted by the district court. If
3 objections are not timely filed, they may be deemed waived. Any objections filed should be
4 captioned with the following case number: **CV-12-321-TUC-CKJ**.

     DATED this 18th day of July, 2013.

                                      D. Thomas Ferraro
                                United States Magistrate Judge